UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**DORIS LEVESQUE**,                                        Case No. 3:10 CV 606

            Plaintiff,                                        Judge Jack Zouhary

      vs.                                        REPORT AND RECOMMENDATION

**CITY OF TOLEDO**,

            Defendant.                                        Magistrate Judge James R. Knepp II

### Introduction

Plaintiff Doris Levesque was an employee of the Defendant City of Toledo's Water Department until April, 2009. She alleges Defendant and its employees discriminated against, retaliated against, and harassed her based on her race.

Plaintiff originally filed this action in the Lucas County Court of Common Pleas. Defendant removed the case to this Court. The District Court has jurisdiction over this case under 28 U.S.C. § 1331. Plaintiff brought four causes of action:

1.      Race discrimination under Ohio Revised Code Chapter 4112; Title VII, 42 U.S.C. § 2000e *et seq*.; and 42 U.S.C. § 1981;

2.      Retaliation based on race in violation of Chapter 4112 and Title VII;

3.      Hostile work environment under Chapter 4112; and

4.      Conspiracy.

Defendant filed a Motion for Summary Judgment on all counts. (Doc. 16). Plaintiff filed an Opposition (Doc. 28), and Defendant filed a Reply (Doc. 31). This Motion was referred to the undersigned for a Report and Recommendation. For the reasons explained below, the undersigned

recommends the Motion be granted. Defendant also filed a Motion to Strike (Doc. 32), and Plaintiff

filed an Opposition (Doc. 33), which will be addressed herein.

### Background

Viewing the facts in a light most favorable to Plaintiff, the background to this case is as

follows.[1]  Beginning in August 2003, Defendant employed Plaintiff – who is African-American –

as a clerk, first in the Division of Utilities Administration, and then in its Division of Water

Distribution. Plaintiff was also a member of AFSCME Local 7.

On October 10, 2008, Michael Konwinski, Supervisor of Utility Accounting, called Plaintiff

into his office to speak with him and Amy Szalkowski, an Administrative Specialist. Part of

Szalkowski's job was to supervise employees in dispatch. Konwinski and Szalkowski state that the

purpose of this conversation was to advise Plaintiff to spend less time in the dispatch office

socializing with dispatch employees. Plaintiff states she was prevented from leaving the office and

"physically assaulted and verbally abused by" Konwinski and Szalkowski. Konwinski and

Szalkowski both yelled at Plaintiff about "where [she] was supposed to be at any given time." (Doc.

---

[1] In its Motion to Strike, Defendant first argues Plaintiff's "Declaration", submitted with her Reply, is an effort to circumvent the requirements of Rule 56. Declarations satisfying the requirements of 28 U.S.C. § 1746 may be considered on a summary judgment motion. *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002).  However, all "documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993). Defendant specifically objects that Plaintiff's declaration contains hearsay, opinion, references to documents not in the record, and references to contract violations irrelevant to the pending action. *See* Fed. Civ. R. 56(e) (affidavits must be "made on personal knowledge", "set forth such facts as would be admissible in evidence" at the time of trial and "shall show affirmatively that the affiant is competent to testify on the matters stated therewith"). Defendant is correct that Plaintiff's declaration contains inadmissible material. The Court has taken care to consider only facts within the personal knowledge of the affiant and which otherwise satisfy the Rule from Plaintiff's Declaration.

16-14, at 4). Plaintiff testified that as she was attempting to leave the office, Szalkowski backed up into the door when Plaintiff's hand was on the door handle. Plaintiff's hand was twisted in the door handle, injuring her pinky finger. Plaintiff told her supervisor, Bob Holmes, she was going to the emergency room, to file charges with the City's affirmative action and workplace violence department, and to the Toledo Police Department. Plaintiff testified Holmes gave her permission to leave. Holmes disputes this. Plaintiff sought medical care and went to physical therapy for twelve weeks for tendonitis in her pinky finger.  Plaintiff filed workplace violence and affirmative action charges.

While Plaintiff was out of the office, she received a voicemail message from Holmes stating she was not going to be suspended as far as he knew and she should not worry. Upon her return to work, Konwinski served Plaintiff with disciplinary charges for leaving work without permission. Plaintiff was temporarily suspended from work.

Also on October 10, 2008, Plaintiff filed a discrimination charge with the Ohio Civil Rights Commission (OCRC) alleging racial discrimination and harassment based on the incident in Konwinski's office. Plaintiff testified that after the October 10 incident, Szalkowski would follow her around the workplace including into the bathroom, often holding a pencil and paper.

On October 14, 2008, while Plaintiff was serving her suspension, two Caucasian supervisors taped a return to work hearing notice to Plaintiff's front door. On October 22, 2008, Plaintiff was served with paperwork for a disciplinary hearing.

On November 17, 2008, Plaintiff was served with disciplinary hearing paperwork. On December 16, 2008, Holmes and another Caucasian supervisor, Samuel Thomas, served Plaintiff with disciplinary hearing paperwork in front of other employees.

On January 20, 2009, Plaintiff filed a second charge with the OCRC alleging retaliation. She claimed Defendant's denial of her request for overtime on August 21, 2008 was retaliation for the October, 2008 incident. Plaintiff later voluntarily withdrew this complaint.

In late January, 2009, Plaintiff was charged with taking an unauthorized break, personal use of city equipment (telephone) and failing to perform duties. The disciplinary charges initially included incorrect dates, which were corrected after Plaintiff brought the erroneous dates to management's attention. Plaintiff was served the original charges on January 27, 2009 and the corrected charges on January 29, 2009. Plaintiff testified she was never informed her work phone calls would be monitored and that her phone line did not have a recording stating that phone calls would be recorded.

On February 2, 2009, Plaintiff attempted to serve Terry Russeau, Acting Commissioner, with paperwork. Russeau "got irate and used foul language." (Doc. 28, at 9). On February 3, 2009, Plaintiff filed an OCRC charge against Defendant and Terry Russeau alleging retaliation. On February 10, 2009, Holmes and Thomas served Plaintiff with disciplinary hearing paperwork in front of other employees.

On February 23, 2009, a hearing was held regarding Plaintiff's January disciplinary charges. She was found guilty of all counts.

On March 3, 2009, Defendant ran reports of employee internet usage for various employees, including Plaintiff. On March 6, 2009, Plaintiff was charged with violations relating to personal internet use including: extensive use of city equipment for personal business; conducting personal business on city time, theft of city time, violation of memorandums dated February 14, 2008, November 10, 2008 and November 17, 2008; violation of administrative policy numbers fourteen

4

and 29; unauthorized breaks; conduct unbecoming a city employee; and gross misconduct and insubordination. The charges were based on an investigation of Plaintiff's internet use from January 6 to February 23, 2009. She was served with these charges in front of other employees. On this same date, she filed an OCRC charge alleging racial discrimination and retaliation.

On March 10, 2009, Plaintiff was served with an imposition of penalty letter in front of other employees. On March 11, 2009, Plaintiff filed charges with the OCRC alleging retaliation and racial discrimination. On March 12, 2009, Plaintiff was served with disciplinary hearing paperwork at home. On March 16, 2009, Plaintiff was again served with disciplinary hearing paperwork at home in front of her neighbors.

On March 23, 2009, Plaintiff filed suit against the City.

Following a disciplinary hearing on March 24, 2009 (on the March 6 charges), at which Plaintiff was represented by a Union representative, Defendant was found Plaintiff guilty of all charges in the March 6 charge. Defendant terminated Plaintiff's employment on April 7, 2009. Plaintiff was served with this termination letter at home. The next day, Plaintiff filed charges with the OCRC alleging retaliation and racial discrimination.

On February 22, 2010, Plaintiff filed the instant case.

Plaintiff states she was replaced by a Caucasian employee – Cindy Barber.

### Standard of Review

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."  When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

**Analysis**

*Section 1981 Claims*

To the extent Plaintiff seeks to recover under 42 U.S.C. § 1981, such claims must be dismissed.  Section 1981's implicit cause of action does not extend to suits brought against state actors.  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 732 (1989); *see also Arendale v. City of Memphis*, 519 F.3d 587, 594-99 (6th Cir. 2008).

*Race Discrimination (Title VII and Ohio Law)*

*Prima Facie Case*

Because Plaintiff presents no direct evidence of discrimination, her race discrimination claim is analyzed under the *McDonnell Douglas* burden shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Plaintiff must first establish a prima facie case, which generally requires: 1) she is in a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the job; and 4) she was replaced by a person outside of the protected class or was treated differently than similarly situated non-protected employees. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008).[2]  Plaintiff asserts discrimination both in discipline and in her termination. Defendant contends Plaintiff has not presented evidence to support the third and fourth

---

[2] Claims brought under Revised Code § 4112 are subject to the same analysis as discrimination claims under Title VII. *Hollins v. Atlantic Co.*, 188 F.3d 652, 658 (6th Cir. 1999).

6

elements of a prima facie case – qualification and differential treatment.

*Qualification*

To show she is qualified for a position, a plaintiff must put forth sufficient evidence for a reasonable jury to find that she has "met the legitimate expectations of [her] employer." *Cline v. Catholic Diocese*, 206 F.3d 651, 660 (6th Cir. 1999). "The prima facie burden of showing that a plaintiff is qualified can . . . be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003) (en banc). This rule focuses the Court's inquiry on the "plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.*

In support of her argument that she was qualified, Plaintiff points to Konwinski's testimony that he wrote Plaintiff a letter of recommendation or good reference for her performance in the past (Doc. 23, at 20-21). Though not the strongest evidence of qualification, evidence that Plaintiff received a good reference is sufficient to show she was qualified for the position and to overcome summary judgment. *Compare Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) (explaining that where a plaintiff had been identified as a "potential candidate" for a job, this was "extremely weak evidence" but "would allow a fact finder to infer that the plaintiff met the minimum job qualifications").

*Similarly Situated Individuals*

Defendant contends Plaintiff has not shown she was treated less favorably than Caucasian employees. Plaintiff responds that she has identified a Caucasian replacement and has identified other individuals who similarly shirked their work duties and were not punished, or were not

7

punished as harshly.

To establish the similarly-situated prong, Plaintiff must point to "comparables" who are "similarly-situated *in all respects*." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). "[T]o be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.*

With respect to other individuals Plaintiff claims were treated differently, she argues:

> Ms. Levesque has also identified in her deposition at least three individuals who are caucasian, and are permitted to shirk their job duties or shop online while at work. (Levesque Depo. pp. 47-48). In the discovery produced by Defendant, there is no record of any of these employees having been disciplined.

(Doc. 28, at 8). She also contends some "Caucasian employees . . . received discipline less than termination for serious performance issues." (Doc. 28, at 8). Plaintiff has presented no evidence that any of these individuals is similarly situated and these conclusory allegations that other employees committed similar infractions without consequence or with less consequence is alone insufficient to create a genuine issue of material fact.  *See Alexander*, 576 F.3d at 560 (conclusory allegations insufficient to survive summary judgment). Plaintiff also argues, pointing to portions of OCRC investigative files from her charges,[3] that some Caucasian employees – including Chris Green, Tim

---

[3] Defendant objects to Exhibits B and C to Plaintiff's Opposition – portions of the OCRC investigative files in two charges filed by Plaintiff. (Docs. 28-2 and 28-3). Defendant argues the documents are unauthenticated, were not exchanged in discovery, and because they are only excerpts, "are apt to be taken out of context." (Doc. 32, at 5-6). Plaintiff responds that the documents are self-authenticating as public records and that many of the documents were produced by Defendant to the OCRC. Certified public records are self-authenticating under Federal Evidence Rule 902(4). Each of the attachments contains a certification by the OCRC investigator. The Court will therefore consider these documents.

Troutman and Rodney Dumond – were disciplined for excessive phone and internet use but not terminated. (Doc. 28, at 8). However, Plaintiff fails to show that any of these "comparables" are "similarly-situated *in all respects*." *Mitchell*, 964 F.2d at 583. Plaintiff did not provide evidence that the charges against these individuals were the same, that their conduct was the same, and that they dealt with the same supervisor. *Id.* Rather, Plaintiff simply points to Defendant's answer to the OCRC charge where Defendant identified these three individuals as city employees who had at some point been disciplined for personal phone or internet use. Defendant never asserted these individuals were similarly situated to Plaintiff and Plaintiff fails to provide admissible evidence to prove any of the three are similarly situated. Therefore, Plaintiff cannot make out a prima facie case for discriminatory discipline.

With respect to her discriminatory discharge claim, Plaintiff identifies a Caucasian replacement – Cindy Barber. Although Defendant denies Barber replaced Plaintiff – asserting that Plaintiff's position remained vacant for over a year and a half – taking the facts in the light most favorable to Plaintiff, this is sufficient to create an issue of material fact. *Russell*, 537 F.3d at 604.

*Non-discriminatory Reason*

If Plaintiff satisfies the elements of a prima facie case, the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. "This is merely a burden of production, not of persuasion," which is satisfied if the defendant "simply explains what he has done or produces evidence of legitimate nondiscriminatory reasons." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585-86 (6th Cir. 2009) (internal citations and quotations omitted). Defendant offers a legitimate non-discriminatory reason for Plaintiff's termination: Plaintiff violated

9

Defendant's rules regarding personal internet use.[4]

*Pretext*

      The burden then shifts back to Plaintiff to show that Defendant's proffered reason was a pretext for discrimination. Plaintiff can establish pretext by showing that the stated reason: 1) had no basis in fact; 2) was not the actual reason; or 3) was insufficient to explain Defendant's decision. *Virts v. Consol. Freightways Corp. of Delaware*, 285 F.3d 508, 521 (6th Cir. 2002). At the pretext stage, plaintiff retains the ultimate burden of producing "sufficient evidence from which the jury could reasonably reject [Defendant's] explanation and infer that the defendants intentionally discriminated against him." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (internal quotations and citation omitted).

      Plaintiff claims Defendant's reason is pretext because: 1) Defendant could not prove that it was actually Plaintiff who conducted the internet searches at issue; and 2) Defendant's disciplinary process was "procedurally improper [under her collective bargaining agreement] and factually suspect[.]" (Doc. 28, at 10).

      Plaintiff first seemingly argues Defendant's reason had no basis in fact.  To prove pretext under this method, Plaintiff must show more than a dispute about the underlying facts. Under the Sixth Circuit's "modified honest-belief doctrine", "for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, the employer must be able to establish its

---

    [4] Plaintiff objects to Defendant's statement in its brief that "the City can demonstrate with documents, recordings and witnesses that disciplining Plaintiff for her infractions was justified for violating City rules and policies." (Doc. 16, at 13). Plaintiff argues that by failing to point to such documents, Defendant has not met its summary judgment burden. However, Defendant's summary judgment motion as a whole, along with its exhibits indicate Defendant disciplined Plaintiff for violations of city rules.  Defendant has "simply explain[ed] what [it] has done" and this is sufficient. *Upshaw*, 576 F.3d 585-86.

reasonable reliance on the particularized facts that were before it at the time the decision was made" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006) (internal quotations omitted). The employee then has the opportunity to introduce contrary evidence, but the decisional process need not be optimal, only reasonably informed and considered. *See id.* Defendant has pointed to testimony and internet and phone records to show that these were the reasons Plaintiff was disciplined and ultimately terminated. Although Plaintiff points to some testimony that others had access to her computer, she has not provided any evidence that raises an inference that Defendant did not believe Plaintiff improperly used her city computer. Thus, this is insufficient to show pretext. *Wright*, 455 F.3d at 708.  Additionally, as Defendant points out, Bill McCoy's testimony – to which Plaintiff points to show others had access to her computer – can only speak to the period from February through April, 2009 when McCoy testified he worked with Plaintiff.  The charges for improper internet use were for the time period of January 3 to February 23, 2009.

Plaintiff's second argument – that the disciplinary process violated her collective bargaining agreement – seemingly relies on the second method of proving pretext: that the stated reason for termination was not the actual reason. Even if Plaintiff were correct that Defendant violated the collective bargaining agreement, this would not be evidence raising an inference that racial discrimination was "*more* likely" Defendant's motivation than Defendant's proffered reason – inappropriate use of the internet.[5] *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000)

_____

[5] As Defendant points out in its motion to strike, collective bargaining agreement violations are governed by the State Employment Relations Board. *See Franklin City Law Enforcement Ass'n v. Fraternal Order of Police*, 59 Ohio St. 3d 167, ¶1-2 Syllabus (1991) ("The State Employment Relations Board has exclusive jurisdiction to decide matters committed to it pursuant to R.C. 4117."). Additionally, even were such claims cognizable, Plaintiff did not plead them in her complaint.

(internal quotation omitted). In short, Plaintiff has offered no evidence indicating Defendant made its termination decision on grounds other than those offered.

### *Retaliation (Title VII and Ohio Law)*

#### *Prima Facie Case*

To establish a prima-facie case of retaliation, Plaintiff must demonstrate: 1) she engaged in activity protected by Title VII; 2) Defendant knew of her exercise of those protected rights; 3) Defendant subsequently took an adverse employment action against her or subjected her to "severe or pervasive" retaliatory harassment; and 4) there was a causal connection between her protected activity and the adverse employment action. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2004).

The first three elements of a prima facie case are undisputed, but Defendant contends that Plaintiff cannot satisfy the fourth element – causal connection. Plaintiff argues the fact that she was "harassed repeatedly . . . disciplined following each exercise of her rights . . .followed by Amy Szalkowski, and monitored by supervisors . . . together with the close proximity of the harassment of [Plaintiff] and the progressive instances of the charges in response to a series of [OCRC] filings by Plaintiff" raises a question of material fact regarding causation. (Doc. 28, at 11). Additionally, Plaintiff argues: "Other records produced by Defendant illustrate other Caucasian employees who were not terminated despite serious misconduct." (*Id.*).

"A causal link requires the plaintiff to proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Zanders v. Nat'l R .R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990) (citations omitted); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) ("Plaintiff must produce sufficient evidence from which an inference

12

could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action."). Generally, mere temporal proximity between protected activity and termination without other indicia of retaliatory conduct is not sufficient to establish the causal connection element of a retaliation claim. *See Arendale*, 519 F.3d at 606. However, the Sixth Circuit has held that in a small set of cases, temporal proximity alone may be enough:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (holding plaintiff established causation element when employer laid plaintiff off the same day employer learned of EEOC charge); *Howington v. Quality Restaurant Concepts, LLC*, 298 F. App'x 436, 447 (6th Cir. 2008) (holding two-day lapse between protected action and suspension is sufficient to infer causal connection); *see also Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435-36 (6th Cir. 2009) (holding that three month gap between protected activity and adverse employment action in conjunction with heightened scrutiny of plaintiff's work and harassment was sufficient to show causation). If "some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality" under the fourth element. *Mickey*, 516 F.3d at 525; *see also Arendale,* 519 F.3d at 606 (rejecting plaintiff's claim that a two-month gap between EEOC charge and adverse employment action constituted sufficient evidence of causation). "Beyond temporal proximity, other indicia of retaliatory conduct would include evidence that the plaintiff was treated differently . . . than

13

similarly situated employees who had not exercised Title VII rights . . . or evidence that the plaintiff was subjected to closer disciplinary scrutiny after exercising Title VII rights." *Evans v. Prospect Airport Servs., Inc.*, 286 F. App'x 889, 895 (6th Cir. 2008).

Below is a condensed timeline of Plaintiff's OCRC filings and disciplinary history:

| | |
|---|---|
| October 10, 2008 | Incident in Konwinski's office |
| October 10, 2008 | Disciplinary charges |
| October 10, 2008 | OCRC filing alleging discrimination |
| January 20, 2009 | OCRC filing alleging retaliation |
| January 29, 2009 | Disciplinary charges |
| February 3, 2009 | OCRC filing alleging retaliation and discrimination |
| March 6, 2009 | Disciplinary charges |
| March 6, 2009 | OCRC filing alleging retaliation, discrimination, and harassment |
| March 10, 2009 | Served with results of February 23 disciplinary hearing |
| March 11, 2009 | OCRC filing alleging retaliation and discriminatory discipline |
| March 23, 2009 | Plaintiff filed suit against Defendant |
| April 7, 2009 | Served with termination. |
| April 8, 2009 | OCRC filing alleging discrimination in termination |

Plaintiff's allegation about the temporal proximity of the disciplinary charges falls in the middle of the Sixth Circuit's rulings on the amount of time between protected activity and action from which a causal connection may be inferred. Nine days elapsed between Plaintiff's January 20, 2009 OCRC filing and the disciplinary charges filed against her on January 29, 2009, and a little over a month elapsed between Plaintiff's February 3, 2009 OCRC filing and the March 6, 2009 disciplinary charges. Plaintiff's vague and conclusory statements that she was "harassed repeatedly", "monitored by supervisors", and that "[o]ther records produced by defendant illustrate other Caucasian employees who were not terminated despite serious misconduct" are not sufficient to overcome a summary judgment motion. *Alexander*, 576 F.3d at 560 ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."). As discussed below, Szalkowski following Plaintiff in the workplace is not

14

sufficiently "severe and pervasive" to constitute retaliatory harassment. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22 (1993). Thus, Plaintiff is left solely with a temporal proximity argument. For the sake of argument, the Court will assume the temporal proximity of Plaintiff's OCRC filings and her discipline is sufficient to satisfy the causal connection element, and look to whether Plaintiff can establish pretext.

*Non-discriminatory Reason and Pretext*

As with discrimination, if Plaintiff satisfies the elements of a prima facie case, the burden shifts to Defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action. Defendant again asserts that it disciplined and terminated Plaintiff because she violated the rules, not in retaliation.

The burden shifts back to Plaintiff to show that Defendant's proffered reason was pretext for discrimination. Plaintiff asserts the same two arguments as she did in her racial discrimination claim: 1) Defendant could not prove Plaintiff visited the non-work related websites; and 2) Defendant's discipline and termination procedure violated her collective bargaining agreement. For the same reasons advanced above, Plaintiff's arguments do not show pretext. Plaintiff has simply not shown "sufficient evidence from which the jury could reasonably reject [Defendant's] explanation and infer that [Defendant] intentionally discriminated against [her]." *Johnson*, 319 F.3d at 866.

**Hostile Work Environment**

Defendant contends Plaintiff has submitted no evidence that she was harassed based on her race. Plaintiff responds there is evidence she was followed by Szalkowski, monitored by supervisors, subjected to numerous disciplinary events, and served with disciplinary charges in front of her neighbors and co-workers.

To establish a prima facie case for a racially hostile work environment, a plaintiff must demonstrate: 1) she was a member of a protected class; 2) she was subjected to unwelcome racial harassment; 3) the harassment was based on race; 4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and 5) the employer is liable because it knew or should have known of the harassment and failed to implement prompt and appropriate corrective actions. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009). To assess the fourth prong of an asserted prima facie case, courts must examine the totality of the circumstances, considering the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, as opposed to a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Id.* (citing *Harris,* 510 U.S. at 23). Both an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive. *Harris*, 510 U.S. at 21-22.

Plaintiff has provided no evidence to show the harassment she alleges was racially motivated or that it was so severe that it amounted to a hostile work environment.[6] Plaintiff testified that she believed the harassment was racially motivated because she is African-American and her supervisors are Caucasian, and that she did not believe Caucasian employees were subject to similar discipline

---

[6] In her opposition, Plaintiff asserts: "As Defendant has not discussed or argued that [Plaintiff] was not a member of a protected class or discussed the third through fifth elements of a prima facie case of hostile work environment as required under its *Celotex* burden, Plaintiff will not discuss those elements either." (Doc. 28, at 13). Defendant, in its Motion, however, stated: "The only element Plaintiff has proven is that she is a member of a protected class." (Doc. 16, at 18). As Defendant points out, this sentence implies that Defendant is asserting Plaintiff cannot prove elements two through five. It is ultimately Plaintiff's burden to come forward with evidence that she *can* satisfy her *prima facie* case.

16

for similar actions. In her Declaration, Plaintiff asserts that she was served with disciplinary and other paperwork in front of other employees and at home in an effort by Defendant to embarrass her. Plaintiff's subjective beliefs, however, are insufficient to show racial motivation. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584-85 (6th Cir. 1992) (rumors, conclusory allegations, and subjective beliefs set forth in plaintiff's affidavit insufficient to create genuine issue of material fact); *see also Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997) (holding, in age discrimination context that "mere personal beliefs, conjecture and speculation are insufficient to support an inference of age discrimination"). Being followed at work and served with paperwork in front of co-workers and neighbors also simply doesn't rise to the level of severe and pervasive. Because she has presented no other evidence, summary judgment is appropriate on her hostile work environment claim.

### Conspiracy

In her Complaint, Plaintiff alleges there was a "conspiracy among the acting manager, an administrative specialist, and the supervisor of utility accounting . . . resulting in ongoing harassment in an attempt to procure Plaintiff's resignation." (Doc. 1). Defendant correctly argues that Plaintiff's claim of conspiracy is "vague and conclusory" and she has presented no evidence to support it. (Doc. 16, at 20). In her opposition, Plaintiff does not respond to Defendant's arguments regarding her conspiracy claim. Because Plaintiff has not offered any evidence supporting this claim, Defendant's Motion should be granted as to it.

### Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendant's Motion for Summary Judgment (Doc. 16) be granted.

s/James R. Knepp II
United States Magistrate Judge

17

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).